UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LORI L. THOMAS;

    Plaintiff,

v.

THOMAS ZACHRY; MARNA ZACHRY; JOHN HARPER; and STOREY COUNTY and its BOARD OF COMISSIONERS,

    Defendants.

Case No. 3:17-cv-0219-LRH-WGC

ORDER

Before the court is plaintiff Lori L. Thomas' ("Thomas") motion for a preliminary injunction. ECF No. 3. Defendant Storey County and its Board of Commissioners filed an opposition (ECF No. 21) joined by defendants Thomas Zachry, Marna Zachry, and John Harper (collectively "homeowner defendants") (ECF No. 25), to which Thomas replied (ECF No. 33). Thereafter, defendants filed "supplements" to their oppositions that are more appropriately considered sur-replies. *See* ECF Nos. 38, 39. A hearing on Thomas' motion for a preliminary injunction was held on May 31, 2017.

**I.    Facts and Procedural Background**

At its heart, this case involves a dispute over a dirt road in Storey County, Nevada, commonly known as "Sutro Springs Road." In October 2016, Thomas purchased approximately 40 acres of real property within Storey County located near Dayton, Nevada. This property was originally carved out of a 960 acre parcel of land in Storey County that was taken out of the

1

public domain and transferred to private ownership by United States Land Patent No. 27-68-0138 recorded February 8, 1968 ("1968 patent").[1] The property conveyed by the 1968 patent was subsequently divided into smaller parcels through the Storey County development process. On August 15, 1995, the Storey County Board of Commissioners ("Commissioners") approved a subdivision of one of the parcels adjacent to the Thomas property. The final subdivision map ("1996 map") was recorded in Storey County on January 10, 1996, as Document No. 77085.[2]

Sutro Springs Road is a now-paved road running through the approved subdivision. The paved portion of the road terminates in a cul-de-sac at the edge of Thomas' property. A visible dirt road then continues across Thomas' property in a northeasterly direction, continues onto public land managed by the Bureau of Land Management ("BLM"), and ultimately leads to defendants Zachry's and Harper's private properties above the public land.

After Thomas purchased her property in October 2016, she erected barriers and obstacles, along with no trespassing signs, at the location where Sutro Springs Road transitions from the paved road ending in the cul-de-sac to the dirt road entering her property. In response, on or about December 28, 2016, the Storey County District Attorney ("D.A.") sent a letter to Thomas advising that the dirt road across her property was a long-established public road and requesting that she remove the barriers and allow the road to be used as a public roadway.[3] Thomas refused. Since that time, however, Thomas alleges that various trespassers have entered her property along the disputed roadway on the advice and approval of the Storey County D.A. Then, in April 2017, during its regularly scheduled meeting, the Storey County Commissioners approved a project to allow the Storey County Public Works Department to immediately remove all of the obstructions Thomas had placed on the road.[4]

///

---

[1] A copy of the 1968 patent is attached as Exhibit 1 to Thomas' motion for a preliminary injunction. *See* ECF No. 3, Ex. 1.
[2] A copy of the 1996 map is attached as Exhibit 2 to Thomas' motion for a preliminary injunction. *See* ECF No. 3, Ex. 2.
[3] A copy of the Storey County D.A.'s letter is attached as Exhibit 3 to Thomas' motion for a preliminary injunction. *See* ECF No. 3, Ex. 3.
[4] A copy of the proposed and approved agenda item from the April 2017 Commissioners meeting is attached as Exhibit 4 to Thomas' motion for a preliminary injunction. ECF No. 3, Ex. 4.

On April 7, 2017, Thomas filed the underlying complaint against defendants alleging four causes of action: (1) a petition for writ of mandamus or injunction against Storey County; (2) a Fifth Amendment takings claim; (3) entitlement to injunctive relief; and (4) declaratory relief and quiet title. ECF No. 1. Thereafter, on April 10, 2017, Thomas filed the present motion for a preliminary injunction seeking to enjoin Storey County from removing the obstructions she had placed on the road. ECF No. 3.

## II. Legal Standard

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). A court may grant a preliminary injunction upon a showing of: (1) irreparable harm to the petitioning party; (2) the balance of equities weighs in petitioner's favor; (3) an injunction is in the public's interest; and (4) the likelihood of petitioner's success on the merits. *See id.* at 20 (citations omitted). In *Winter*, the Supreme Court stated that a "likelihood" is required as to all four factors. *See id.* at 22. The Ninth Circuit has since interpreted the *Winter* decision as being compatible with a sliding scale, under which a party may satisfy the requirements for an injunction with a lower showing under one factor if there is a very strong showing under another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, the Ninth Circuit has determined that "serious questions" as to the merits would satisfy the "likelihood of success" requirement in the event of a strong showing of irreparable harm. *Id*.

## III. Discussion

### A. Likelihood of Success on the Merits

"The sine qua non of preliminary injunction inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). However, a plaintiff may be awarded a preliminary injunction by establishing "serious questions going to the merits were raised and the

balance of hardships tips sharply in the plaintiff's favor," so long as the plaintiff satisfies the additional *Winter* factors. *Alliance for the Wild Rockies*, 632 F.3d at 1131.

In her motion, Thomas argues that she is likely to succeed on her Fifth Amendment claim against Storey County for unconstitutionally taking her real property without just compensation. *See* ECF No. 3. Thomas' claims are premised on the assumption that the dirt road that crosses her property is a private road. *See* ECF No. 1. Thus, the threshold question for the court is whether the road is public or private. If the road is private, then Thomas may be likely to succeed on her claims. However, if the road is public, then Thomas is not likely to succeed on her claims and may not be entitled to preliminary injunctive relief.

The court has reviewed the pleadings, documents and exhibits in this matter and finds that Thomas is not likely to succeed on her claims. The evidence before the court does not support a finding that the road crossing her property is a private road. Rather, the weight of the evidence, largely undisputed, shows that the road was used by the public for many years prior to transfer of the underlying property from the federal government to private ownership in 1968. As such, it is a public road, commonly known as an R.S. 2477 road.

### 1. R.S. 2477 Roads

In 1866, Congress passed 14 Stat. 253, which granted the States the right to construct roads over public land owned by the federal government. That act, later codified at 43 U.S.C. § 932, is more generally referred to as Revised Statutes 2477 or R.S. 2477 and states in its entirety: "And be it further enacted, [t]hat the right-of-way for the construction of highways over public lands, not reserved for public purposes, is hereby granted." R.S. 2477 was a self-executing statute, and the creation of an R.S. 2477 right-of-way required no formal act by a state body. *See S. Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 741 (10th Cir. 2005). Rather, R.S. 2477 acted "as a present grant" to use and traverse public land, "which takes effect as soon as it is accepted[.]" *Wilderness Soc'y v. Morton*, 479 F.2d 842, 882 (D.C. Cir. 1973).

Nevada has "accepted" and acknowledged the creation of R.S. 2477 roads throughout the state. In late 1979, the Nevada legislature enacted NRS 405.191, which defines what constitutes a public road in the state. It provides:

> **NRS 405.191 "Public road" defined; county roads and highways may be established on rights-of-way over certain public lands.**
>
> As used in NRS 405.193 and 405.195, "public road" includes:
>
> 1. …
>
> 2. Any way which exists upon a right-of-way granted by Congress over public lands of the United States not reserved for public uses in chapter 262, section 8, 14 Statutes 253 (former 43 U.S.C. § 932, commonly referred to as R.S. 2477), and **accepted by general public use and enjoyment before, on or after July 1, 1979**. Each board of county commissioners may locate and determine the width of such rights-of-way and locate, open for public use and establish thereon county roads or highways, **but public use alone has been and is sufficient to evidence an acceptance of the grant of public user right-of way pursuant to former 43 U.S.C. § 932**.

Nev. Rev. Stat. § 405.101 (emphasis added).

The determinative issue for Thomas' motion is whether Sutro Springs Road, as it crosses her property, was a valid and existing R.S. 2477 public road as of February 8, 1968, when the property was transferred from public land to private ownership.[5] Generally, the party "claiming a right-of-way bears the burden of establishing its existence." *United States v. Carpenter*, 2016 U.S. Dist. LEXIS 108400, *43 (D. Nev. August 16, 2016) (citing *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1077 (9th Cir. 2010)). To establish the existence and acceptance of an R.S. 2477 road, a claimant must show: "(1) that the alleged [road] was located 'over public lands,'[6] and (2) that the character of its use was such as to constitute acceptance by the public of the statutory grant." *Hamerly v. Denton*, 359 O.2d 121, 123 (Alaska 1961). In Nevada, a road is "accepted" for purposes of R.S. 2477 if there was general "public use [of the road] over a specified period of time." *Carpenter*, 2016 U.S. Dist. LEXIS 108400, *51 (citing *S. Utah Wilderness Alliance*, 425 F.3d at 770); *see also*, Nev. Rev. Stat. § 405.191(2) (defining "public road" as a road "accepted by general public use and enjoyment"). Public use does not require constant or uninterrupted use, but it must be more than "occasional or desultory[.]" *Carpenter*,

---

[5] In 1976, Congress passed the Federal Land Policy and Management Act ("FLPMA"), which repealed R.S. 2477. The repeal, however, was prospective only. The FLPMA specifically states that any valid R.S. 2477 right-of-way existing on the date of approval of the FLPMA would continue to be in effect. Pub. L. No. 94-579, Section 701(a), 90 Stat. 2743, 2786 (1976). Thus, if the disputed road was an R.S. 2477 road in 1968 when the property was transferred from the public domain, it continues to be such a road unless the road has been abandoned.
[6] It is undisputed that Sutro Springs Road was originally located over public lands. *See* ECF No. 3, Ex. 1.

2016 U.S. Dist. LEXIS 108400, *51. In determining whether public use has been sufficiently continuous to constitute acceptance of an R.S. 2477 road, a court may take into account the nature of the land upon which the road runs, the historical and traditional use of the land, and the nature of the public use. *See S. Utah Wilderness Alliance*, 425 F.3d at 774; *Brown v. Jolley*, 387 P.2d 278 (Colo. 1963) (holding that regular use by a single person to reach their property constitutes continuous public use).

Here, the historical record evidence before the court shows that the road crossing Thomas' property has been in continuous public use since as early as the late 1880's. In fact, every map and survey of the area containing Thomas' property while the property was still part of the public domain shows Sutro Springs Road crossing the property in a northeasterly direction.[7] These maps graphically confirm that at the time the subject property was transferred from the United States to private ownership in 1968, the Sutro Springs Road was an established and accepted public road under R.S. 2477. Historical maps are direct evidence of public use and are sufficient, in and of themselves, to establish "acceptance" of an R.S. 2477 road. *Anderson v. Richards*, 608 P.2d 1096, 1098 (Nev. 1980); *Carpenter*, 2016 U.S. Dist. LEXIS 108400, *52-53. In fact, in *Anderson*, the Nevada Supreme Court found an R.S. 2477 road based solely on the road's presence on maps and surveys. *Anderson*, 608 P.2d at 1098 n.5. Thus, the clear weight of the historical record in this action supports a finding that the road is a public R.S. 2477 road.

Additionally, defendants have submitted evidence from citizens of Storey County concerning their use of the road prior to and after the 1968 land transfer. In their motion, defendants have proffered four (4) affidavits from individuals who used the road prior to 1968 and have continued to use the road in a manner consistent with the land since that time, such as accessing hot springs, trips for hunting, mining and reaching public land for camping and outdoor activities since that time. *See* ECF No. 38, Exs. 4-7. And at the hearing, defendants

---

[7] Defendants have proffered the following undisputed historical maps of the relevant area of Storey County: (1) an 1887 survey of the Storey County township (ECF No. 21, Ex. 1); (2) an 1890 township plat map (ECF No. 21, Ex. 2); (3) the official county map for Storey County in 1923 (ECF No. 21, Ex. 3); (4) a 1950 United States Geological Survey of the "Virginia City Quadrangle" (ECF No. 21, Ex. 4); and (5) a 1967 United States Geological Survey of the "Flowery Peak Quadrangle" (ECF No. 21, Ex. 5). All of these maps show the road crossing Thomas' property in a northeasterly direction through the northern half of Section 20.

submitted a list of over 40 people who have used the road to either reach public land or the other properties beyond Thomas'. *See* Joint Ex. 1. Further, homeowner defendants presented declarations to the court that establish their own personal use of the road for decades prior to Thomas' purchase of the property: thirty-four (34) years in the case of defendant Harper and forty-four (44) years in the case of the Zachry defendants. *See* ECF No. 39, Exs. 1-2. The court finds that this evidence is also sufficient evidence of continuous public use of the road to constitute acceptance of an R.S. 2477 road across Thomas' property. Therefore, the court finds that the overwhelming evidence in this action establishes that Sutro Springs Road is a public road and Thomas is not likely to succeed on her claims.

### 2. R.S. 2477 Abandonment

At the hearing, Thomas argued that even if the portion of Sutro Springs Road that crosses her property was an R.S. 2477 road when the property was transferred in 1968, it has since been abandoned by Storey County and is now a private, rather than public, road. The court disagrees.

Once an R.S. 2477 road has been accepted through use by the public, it continues to be a public road unless it has been abandoned. *Anderson*, 608 P.2d at 1099. Further, after acceptance by the public of an R.S. 2477 road, subsequent "use by only a few members of the public" or "a substantial reduction in the number of the members of the public who continue" to use the road years later is insufficient to establish abandonment. *Id*. Similarly, obstruction or blocking of the road by a party asserting abandonment is likewise unavailing to establish abandonment of the road, regardless of how long the obstructions have been in existence. *Id*. ("An unlawful encroachment placed upon a public roadway will not constitute an abandonment of the public easement and cannot divest the public of its rights to traverse."). Rather, abandonment can only be accomplished by statute. In Nevada, NRS 405.195 provides the sole statutory basis for abandoning a public roadway. NRS 405.195 provides in relevant part that an action for abandonment requires (1) a petition to abandon the road filed before the board of county commissioners for the county in which the road runs and (2) a public hearing on the issue of abandonment. The party asserting abandonment of a public road carries the burden of proof by "clear and cogent" evidence. *Anderson*, 608 P.2d at 1099.

Thomas contends that when Storey County approved the subdivision plan in 1996 it abandoned the portion of the road that crosses her property. Specifically, Thomas argues that because the approved plan by Storey County required that a cul-de-sac be built on the edge of her property and the plan did not show the road through Thomas' property, Storey County terminated Sutro Springs Road at that point. Thomas' argument is without merit or evidentiary support. Thomas has failed to proffer any evidence of abandonment to satisfy the statutory requirements of abandonment under Nevada law. Although the subdivision plan involved public hearings by the Storey County Commissioners, there is no evidence that any petition or action was put forth to abandon the road at the point it crosses Thomas' property. Therefore, the court cannot find that the road has been abandoned pursuant to the statutory requirements. And contrary to Thomas' argument, an R.S. 2477 road cannot simply be abandoned by approval of a subdivision plan that ignores the existence of the road across it.

### B. Additional Injunction Factors

The court also finds that Thomas has not met the remaining *Winter* factors of irreparable harm, public interest, and the balance of equities sufficient to overcome the court's findings on the likelihood of success on the merits of her claims and thus warrant an injunction. First, although Thomas contends that she stands to lose a portion of her real property absent an injunction because Storey County has declared the roadway on her property a public roadway, such an alleged injury would be compensable through monetary damages and declaratory relief. Thus, Thomas has failed to establish an *irreparable* injury sufficient to warrant injunctive relief. *Russell Rd. Food & Bev., LLC v. Spencer*, 2013 U.S. Dist. LEXIS 11034, *11 (D. Nev. 2013) ("Harm is 'irreparable' for the purposes of a preliminary injunction if it cannot be redressed by a legal remedy or equitable remedy following trial.").

Second, the court finds that both the balance of the equities and the public interest favor denying an injunction. The status quo, prior to Thomas purchasing the property in late 2016 and erecting barriers across the roadway, was that the Sutro Springs Road was an open road to the homeowner defendants' properties and BLM land accessed by the public for many years. As such, the equities favor the homeowner defendants as well as members of the public who used

the road to access private and public lands beyond the Thomas property. In contrast, the hardship to Thomas is continued public use across her property consistent with the historical record of the property.[8] Thus, the balance of equities weighs against an injunction. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993) (holding that in seeking a preliminary injunction, the moving party must suffer a degree of hardship that outweighs the hardship on the opposing party). Finally, the public interest is satisfied in the preservation and protection of R.S. 2477 roads.

Based on the above, the court finds that Thomas is not entitled to an injunction. Accordingly, the court shall deny her motion.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 3) is DENIED.

IT IS SO ORDERED.

DATED this 19th day of June, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[8] It is also significant that the road crossing the property was openly visible when Thomas purchased the property and that the road leads directly into BLM managed public domain.

9